UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER MULLIGAN,

    Plaintiff,

v.

CASE NO: 3-26-cv-353

CITY OF JACKSONVILLE, FLORIDA;
a municipality, WILLIAM MOORE, individually,
CARY COWAN, individually, TRAVIS FERRARI,
Individually, and IAN DALY, Individually.

    Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff CHRISTOPHER MULLIGAN ("Plaintiff" or Mr. Mulligan"), by and through the undersigned counsel, and files this Complaint and Demand for Jury Trial against Defendants, CITY OF JACKSONVILLE, a municipality; WILLIAM MOORE, individually; TRAVIS FERRARI, individually; CARY COWAN, individually, and IAN DALY ("Daly"), individually ("jointly Individual Officers") (all Defendants are collectively referred to herein as "Defendants"). In support of his claims, Plaintiff alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is an adult male resident of Duval County, Florida.

2. Defendant City of Jacksonville ("COJ") is a municipal corporation organized under the charter of the City of Jacksonville.

3. The Jacksonville Sheriff's Office ("JSO") is an agency within COJ which provides and carries out COJ's police functions.

4. Defendant Cary Cowan ("Cowan"), at all times relevant, was a sergeant employed with JSO and was acting under color of law. Defendant Cowan is sui juris and upon information and belief, resides in the State Florida.

5. Defendant William Moore ("Moore") at all times relevant, was an officer employed with JSO and was acting under color of law. Defendant Moore is sui juris and upon information and belief resides in the State of Florida.

6. Defendant Travis Ferrari ("Ferrari") at all times relevant, was an officer employed with JSO and was acting under color of law. Defendant Ferrari is sui juris and upon information and belief resides in the State of Florida.

7. Defendant Ian Daly ("Daly") at all times relevant, was an officer employed with JSO and was acting under color of law. Defendant Daly is sui juris and upon information and belief resides in the State of Florida.

8. At all relevant times herein, Plaintiff was a legally present in Jacksonville, Duval County, Florida.

9. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, 28 U.S.C. 1343, 28 U.S.C. § 1367, 42 U.S.C §§ 1983 and 1988.

10. Venue is proper in this Court as the events that give rise to these claims occurred in Duval County, Florida.

11. Plaintiff has satisfied all conditions precedent prior to bringing this claim and this claim is timely brought.

### FACTUAL BACKGROUND

12. On or about February 17, 2024, Plaintiff was operating his vehicle at or near 1300 13th Street W, Jacksonville Florida.

13. Plaintiff was stopped in the parking lot of the nearby library as is customary for him while he waited for the ride-share app to assign him a new ride.

14. When Plaintiff could not find additional rides, Plaintiff then drove to a friend's home and pulled into the friend's driveway.

15. After Plaintiff pulled into his friend's driveway and had already stopped, two Officers pulled behind Plaintiff and activated the vehicle overhead light.

16. The officers approached Plaintiff and asked Plaintiff for his driver's license. Plaintiff immediately began looking for his driver's license to comply with the officer's command.

17. Despite this, Defendant Moore then asked Plaintiff to exit his vehicle while Plaintiff was still looking for his driver's license.

18. While giving him these conflicting commands, Defendant Moore then opened the passenger side door of the vehicle and pointed his taser at Plaintiff, causing Plaintiff to fear for this life.

19. At the same time, Defendant McGowan had already approached the vehicle on the driver's side and began to also ask Plaintiff to provide his driver's license prior to exiting the vehicle.

20. At that point, Plaintiff was receiving conflicting commands from both officers, who never stopped talking to him while he was attempting to provide his driver's license, exit the vehicle, answer their questions and while he was terrified that the weapon pointed at him would be used against him.

21. At no point did Plaintiff refuse to comply with any command.

22. In fact, Plaintiff specifically told the officers that he was not refusing to provide his driver's license and that he was attempting to comply with their directives.

**Excessive Force Used by the Officers**

23. Without giving Plaintiff any opportunity to comply with any command Defendant Cowan grabbed Plaintiff's left arm and began twisting it.

24. At the same time, Defendant Moore also grabbed Plaintiff's right arm in the same manner.

4

25. Defendant Cowan then stated that Plaintiff was tensing his arm when in reality Plaintiff was being pulled in two different directions by Defendants Cowan and Moore.

26. Defendant Cowan then struck Plaintiff about the face with a closed fist, forcibly pulled Plaintiff out of the vehicle and forcibly slammed him into the pavement.

27. Defendants Moore and Cowan then forcefully pressed Plaintiff's head and face into the pavement, without any threat or resistance on Mr. Mulligan's part.

28. Defendants Daly and Ferrari possessed both the opportunity and the requisite training and skills to intervene and stop Defendants Cowan and Moore from utilizing excessive force against Plaintiff.

29. Rather, than stopping the assault on Plaintiff, Defendant Daly and Ferrari joined Defendants Cowan and Moore to continue to assault Plaintiff.

30. The four Individual Officers then surrounded Plaintiff on the ground and began punching and kicking Plaintiff throughout his head and body including his groin area.

31. The Individual Officers also continued to strike Mr. Mulligan across the face even though his hands were behind his back and his face was pressed against the pavement causing lacerations and bleeding to his ear.

32. The officers also pulled Plaintiff's hair causing a loc of hair to detach from his scalp.

33. Plaintiff was not resisting and could not reasonably do so because the four Individual Officers had fully restrained him. Yet, they continued to strike him.

34. This physical attack on Plaintiff was excessive, unprovoked and unwarranted under the circumstances.

35. At no time did Plaintiff pose an immediate threat to the officers or any other individual.

36. There is also no allegation that the Plaintiff resisted the officers with violence and at no time did Plaintiff resist the officers with violence.

**Lack of Reasonable Suspicion to Stop Plaintiff**

37. The officers' report indicates that Defendant Cowan "pulled into the parking lot to make contact with the occupant of the vehicle, the driver put the car into drive and pulled out of the parking lot."

38. There is no indication that Plaintiff saw Defendant Cowan's vehicle nor is there any indication that Defendant Cowan had activated their vehicle lights to conduct a stop.

39. Further, the mere presence of a vehicle in a parking lot is insufficient to establish reasonable suspicion to conduct a stop.

40. It was not until after the officers had exited their vehicle after stopping Plaintiff in the driveway that they decided among themselves that they were going to use Plaintiff's tints as an excuse for the stop.

41. Further, officers are not entitled to order a driver out of their vehicle for unlawful stops.

42. As such, any command to Plaintiff was not lawful.

43. Defendant unlawfully detained and arrested Mr. Mulligan even though there was no evidence to support any illegal action on the part of Mr. Mulligan and even though they had no legal authority to do so, and his arrest was unwarranted under the circumstances.

44. Specifically, there was no probable cause for Mr. Mulligan's arrest.

45. Furthermore, the level of force used by the Officers against Plaintiff was unjustified, unnecessary, and objectively unreasonable as Plaintiff posed no threat to the Officers.

**JSO's Customs, Policies and Practices**

46. Defendant COJ, through JSO, enforces a policy, customs and procedures that allows its officers to utilize unwarranted and excessive physical force against individuals who pose no immediate threat to the officers or others.

47. Further, JSO uses practice known as a "distractionary blow" which involves striking individuals even when they do not present a threat in order to "distract" them.

48. Further, COJ does not discipline JSO officers who engage in the violation of individual's constitutional rights.

49. JSO officers customarily conduct pretextual stops on individuals with impunity as they are rarely disciplined for such actions.

50. This policy, custom and practice results in excessive force being used with impunity on the public and JSO officers conducting vehicular stops without any reasonable suspicion or criminal activity.

51. JSO officers are free to use excessive force without fear of consequence and in fact do not face any consequence when they engage in routine violations of individual rights.

52. COJ through its customs, policies and practices, failed to ensure that COJ had appropriate safeguards in place to protect citizens against its law enforcement officers' routine constitutional violations as officers are allowed to refrain from reporting such excessive force incidents without consequence.

53. Thus, COJ though JSO instituted and allowed customs, policies of practices of allowing JSO officer to use excessive force on citizens without consequence.

54. As a direct result of these policies, customs and practices, Plaintiff's clearly established constitutional rights against unreasonable seizure and against excessive use of force were violated, resulting in damages to Plaintiff as discussed herein.

## COUNT ONE
## FALSE ARREST
### Violation of Fourth Amendment
### 42 U.S.C. § 1983
### (Defendant Individual Officers)

55. Plaintiff hereby incorporates and re-alleges by reference the allegations in Paragraphs 1 through 54 above as if fully set forth herein.

56. The Fourth Amendment to the United States Constitution provides as follows:

> [t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the person or things to be seized.

57. Thus, Plaintiff had a clearly established right to be free from unreasonable seizure and Plaintiff's arrest without probable cause violates clearly established right set forth by the United States Constitution.

58. Any reasonable officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at the time.

59. At no point during the interaction with Mr. Mulligan did the Individual Officers have a reasonable suspicion to stop Mr. Mulligan, nor did they have any probable cause to effectuate his arrest.

60. Further, the arrest was not objectively reasonable under the totality of the circumstances.

61. The Individual Defendants, acting under color of law, deprived Plaintiff of his rights under the Fourth Amendment of the United States Constitution, which are secured through the Fourteenth Amendment, by stopping Plaintiff without reasonable suspicion and placing Plaintiff under arrest without a warrant or any probable cause.

62. The acts and/or omissions of the Individual Defendants were willful, wanton, reckless, intentional, conscious and malicious, and in deliberate disregard for Mr. Mulligan's constitutional rights.

63. As a direct and proximate result of the actions of by the Individual Defendants, Plaintiff has suffered and will continue to suffer damages, including physical injuries, violation of his constitutional rights, economic damages, emotional distress, Post-traumatic Stress Disorder (PTSD), personal humiliation, mental anguish, and embarrassment, justifying an award including, but not limited to, economic, compensatory, consequential and punitive damages against the Individual Defendants.

## COUNT TWO
## EXCESSIVE FORCE
### Violation of Fourth Amendment
### 42 U.S.C. § 1983
### (Individual Defendants)

64. Plaintiff hereby incorporates and re-alleges by reference the allegations in Paragraphs 1 through 54 above as it fully set forth herein.

65. The Fourth Amendment to the United States Constitution provides as follows:

> [t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the person or things to be seized.

66. The Individual Defendants, acting under color of law, deprived Plaintiff of his rights under the Fourth Amendment of the United States Constitution, which are secured through the Fourteenth Amendment, by subjecting him to unjustified and excessive force.

67. Plaintiff had a clearly established right to be free from unreasonable, unwarranted and excessive force which violates clearly established right set forth by the United States Constitution.

68. Any reasonable officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at the time.

69. The force was unjustified as Plaintiff was not resisting arrest nor was he disobeying any clear lawful commands.

70. Further, at no point did Plaintiff display any violent behavior, nor did he pose a risk to the Individual Officers or anyone else.

71. The acts and/or omissions of Individual Defendants were willful, wanton, reckless, intentional, conscious and malicious, and in deliberate disregard for Mr. Mulligan's constitutional rights.

72. As a direct and proximate result of the actions of by the Individuals Defendants, Plaintiff has suffered and will continue to suffer damages, including physical injuries, violation of his constitutional rights, economic damages, emotional distress, Post-Traumatic Stress Disorder (PTSD) personal humiliation, mental anguish, and embarrassment, justifying an award including, but not limited to, economic, compensatory, consequential and punitive damages against Individual Defendants.

**COUNT THREE**
**False Arrest**
**Violation of Fourth Amendment through**
**COJ's customs, policies and practices**
**42 U.S.C. § 1983**
**(Defendant COJ)**

73. Plaintiff hereby incorporates and re-alleges by reference the allegations in Paragraphs 1 through 54 above as it fully set forth herein.

74. As a citizen of the United States, Mr. Mulligan is protected against unlawful seizures as guaranteed by the Fourth Amendment to the United States Constitution.

75. Any reasonable officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at the time.

76. The Fourth Amendment to the United States Constitution provides as follows:

> [t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the person or things to be seized.

77. COJ through JSO knew that the officers were making pretextual stops and illegal arrests but ratified and condoned their illegal conduct by their customs, policies and practices of failing to discipline their employees who engage in constitutional rights violations.

78. As a result of these procedures, customs, policies and practices maintained by Defendant COJ, individuals in Duval County, including Plaintiff are routinely subjected to pretextual stops and unlawful arrests and the JSO officers are allowed to continue in these constitutional violations with impunity.

79. COJ created and enforced policies, customs and/or practices referenced herein, were the proximate causes or, and/or were producing causes of all damages referenced herein.

80. Further, COJ failed to stop policies and practices of JSO officers making pretextual stops and false arrests by failing to take disciplinary actions against officers who violate individuals' constitutional rights.

81. COJ was deliberately indifferent to and acted in an objectively unreasonable manner regarding Plaintiff's constitutional rights.

82. As a direct and proximate result of the actions and/or inactions of Defendant COJ, Plaintiff has suffered and will continue to suffer damages, including physical injuries, violation of his constitutional rights, economic damages, emotional distress, personal humiliation, Post-Traumatic Stress Disorder (PTSD), mental anguish, and embarrassment justifying an award including, but not limited to, economic, compensatory, and consequential damages against the Defendant COJ.

**COUNT FOUR**
**EXCESSIVE FORCE**
**Violation of Fourth Amendment through**
**COJ's customs, policies and practices**
**42 U.S.C. § 1983**
**(Defendant COJ)**

83. Plaintiff hereby incorporates and re-alleges by reference the allegations in Paragraphs 1 through 54 above as it fully set forth herein.

84. As a citizen of the United States, Mr. Mulligan is protected against unreasonable and excessive force as guaranteed by the Fourth Amendment to the United States Constitution.

85. The Fourth Amendment to the United States Constitution provides as follows:

> [t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the person or things to be seized.

86. Defendant COJ through JSO, created and enforced customs k, policies and practices, including the "distractionary blow" policy, that allows its officers to utilize unwarranted and excessive physical force against individuals who pose no immediate threat to the officers or anyone else.

87. At no point during the interaction with Mr. Mulligan did Defendants have any justifiable reason to subject Mr. Mulligan to such excessive force and the force used against Plaintiff was objectively unreasonable.

88. The force was unjustified as Plaintiff was not resisting arrest nor was he disobeying any clear lawful commands.

89. Further, at no point did Plaintiff display any violent behavior, nor did he pose a risk to the Individual Officers.

90. Defendant COJ knew that JSO officers routinely subjected individuals to excessive force but almost never disciplines these officers.

91. For instance, according to JSO's own reporting, between 2022 and 2024, JSO initiated 424 investigations concerning allegations of excessive force. Out of these 424 allegations, only 3 were upheld.

92. COJ created and enforced policies, customs and/or practices referenced herein, were the proximate causes or, and/or were producing causes of all damages referenced herein.

93. Further, COJ failed to stop policies and practices of JSO officers using excessive force by failing to take disciplinary actions against officers who violate individuals' constitutional rights.

94. COJ was deliberately indifferent to and acted in an objectively unreasonable manner regarding Plaintiff's constitutional rights.

95. As a direct and proximate result, Plaintiff has suffered and will continue to suffer damages, including physical injuries, violation of his constitutional rights, economic damages, emotional distress, Post-Traumatic Stress Disorder (PTSD) personal humiliation, mental anguish, and embarrassment, justifying an award including, but not limited to, economic, compensatory, consequential and punitive damages against Individual Defendants.

## COUNT FIVE
## BATTERY
### (Individual Officers)

96. Plaintiff hereby incorporates and re-alleges by reference the allegations in Paragraphs 1 through 54 above as it fully set forth herein.

97. The individual officers intentionally touched or struck Plaintiff against his will, when they grabbed Plaintiff by his arms, twisting them aggressively, forcefully slammed him on the pavement and positioning their body on top of Plaintiff, and kicking Plaintiff throughout his body including in his groin.

98. The Individual Defendants had no legal justification for his physical contact as Plaintiff was not engaged in any criminal activity, was not disobeying any clear lawful command and was not violent or aggressive toward the officers or anyone else.

99. The Individual Officers' actions were willful, wanton, intentional, conscious and malicious, and in deliberate disregard for Plaintiff's clearly established rights.

100. As a direct and proximate result of the actions and/or inactions of the Individual Officers, Plaintiff has suffered and will continue to suffer damages, including physical injuries, economic damages, emotional distress, personal humiliation, Post-Traumatic Stress Disorder (PTSD), mental anguish, and embarrassment justifying an award including, but not limited to, economic, compensatory, consequential and punitive damages against the Individual officers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Mulligan respectfully requests that this Honorable Court grant the following relief against the Defendants herein:

1) Enter judgment in favor of Plaintiff on all Counts herein;

2) Award Plaintiff compensatory, and other damages as determined by a jury for violation of his federal civil rights and the battery against him, including, but not limited to mental pain and suffering, in an amount in excess of $100,000.00.

3) Award Plaintiff economic losses including but not limited to loss of earnings, and expenses allowable under the law;

4) Award Plaintiff reasonable attorneys' fees, court costs, expenses, pre-judgment interest, and post-judgment interest;

5) Award Plaintiff punitive damages in an amount in excess of $100,000.00 against the Individual Defendants; and

6) Such other or further equitable and monetary relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims in this Complaint.

Dated:  February 17, 2026          Respectfully Submitted

                                                  **AZOR LAW PLLC**

*/s/Naphtalie Azor*
Naphtalie Azor, Esq.
Fla. Bar No. 1024060
AZOR LAW, PLLC
200 N Laura St., 9th FL
Jacksonville, FL 32202
(904) 902-3061(phone)
904-680-2227(facsimile)
nazor@azorlaw.com
info@azorlaw.com
service@azorlaw.com

Attorney for Plaintiff
